We'll hear argument first this morning in Case 11-1545, City of Arlington, Texas v. The Federal Communications Commission and the consolidated case. Mr. Goldstein. Mr. Chief Justice, thank you very much. May it please the Court. This case can get complicated quickly because the word jurisdiction means a lot of different things to a lot of different people and a lot of different contexts, and the parties have advanced both broad and narrow theories for resolving the case. So the thing I can do most helpfully at the beginning, I think, is to frame where I believe the real dispute in the case lies. The FCC claims the authority to interpret Section 332c-7 of the Communications Act with the force of law. And my argument today is limited to the question, that threshold jurisdictional question, which we call interpretive jurisdiction. IOT utilities called it underlying jurisdiction. Law professors like to call it Chevron step zero, but that's what I'm focused on. And the Fifth Circuit said that on that question, the FCC gets Chevron deference, and that is, it gets to decide whether it has the authority to interpret this case. Ginsburg. Mr. Goldstein, this case has been presented in a very complicated way, but it seems to me that what we're dealing with is a rule adopted by the commission, and the commission's rulemaking power, as you know, is very broad. They have power to make rules needed to carry out the provisions of the Act, and 332 counts as a provision of the Act. So why isn't it just a proper implementation of that rulemaking authority? Well, Justice Ginsburg, the question on which you granted certiorari was how to decide that question, not what is the answer to that question. What the Fifth Circuit did, acknowledging a circuit conflict, was decided that the FCC's assertion that you are right is itself entitled to Chevron deference. Breyer. I suppose you win on that, okay? Yes. I grant you I don't see any reason for that. The question is just whether Congress intended them to have a degree of discretionary power. But all the arguments that were here still count against you. So if you want to go into the Chevron step zero or step minus alpha 13-6, I mean, that's fine. But, I mean, at some point, I will hope you go into what I would call the question of we have a statute, just as Justice Ginsburg said. It's an expert statute. It is a statute in an agency that has all kinds of discretionary authority. It includes an important substantive question about what the relation is with the cable television in this area, posts, not cable, but, you know, the broadcast posts. And so all these factors here would suggest, of course, Congress, which is not expert, would have wanted the FCC to figure this one out. Okay. That's at some point. You don't have to go into it at all if you don't want to. But I just want to put that on the table. Don't do it. Okay. Justice Breyer, I do want to talk about it. I do hope that's fine. You don't have to talk about it now. You can talk about it whenever you want. I appreciate it. But I'd like to talk about the things that you want to hear me talk about. I am very conscious of the fact, let me say, that the Court limited its grant of certiorari to the first question presented, which was the abstract Chevron question. And so I just don't want to jump the gun. Ginsburg. But if the abstract question really isn't presented, I mean, just to follow up on what I asked you first, here is a phrase, a reasonable time, and the commission interprets that phrase in a reasonable way. Why is this case any more complicated than that? Why doesn't the FCC have the authority to interpret that term within a reasonable time? Justice Ginsburg, you and Justice Breyer have both asked me to turn to that question, so I'm going to do it. The only point I'm making is that all of these questions assume that we are right on the question presented, which I think we obviously are. So I am happy to move on, but I just did not want to hurry past the legal question on which you granted certiorari. Don't, because I don't think it's so clear. Okay. I will pass. Look, what you've told us is jurisdiction means a lot of things, but what you mean by it is real jurisdiction, right? I mean, what I mean is Chevron step zero jurisdiction. That doesn't clarify things very much for me. What if the statute in this case said the FCC shall have no jurisdiction to establish time limits within which the States must act? Yes. Okay. Would that be a jurisdictional question? That would. That would be. Okay. What if the statute just said the FCC shall not establish time limits within which the States must act? Is that jurisdictional? That is a different kind of jurisdictional question. It is a jurisdictional question. Justice Scalia, so maybe I can help you just on the question of what I'm talking about and whether I can draw my line, or whether it's just malleable and every court is going to get drawn into it, which I suspect you may be concerned about, okay? The kind of jurisdiction I'm talking about is what you called, in your Iowa Utilities opinion for the Court, underlying jurisdiction. And in Iowa Utilities, in the discussion of the FCC's underlying jurisdiction, you undertook the judicial task of looking at the words of the statute and figuring out that Congress did intend, along the lines of the theory that Justice Ginsburg just articulated, that the FCC did have the power to implement those provisions of the 96 Act. And in as we have rehearsed, to be honest, every one of your Chevron opinions deals with this question, just did the agency have the power to interpret this statutory provision with the force of law? You and all of your colleagues on the Court have always decided that question de novo. Scalia, I don't think so. In fact, I think we have said in a number of opinions, and certainly I have said in a concurrence, that the jurisdictional question, like any other question, an alleged jurisdictional question like any other one, is to be decided with deference to the agency. Now, if you talk — if you want to limit your proposal to the entry question of whether the FCC has jurisdiction to administer the Federal Communications Act, I agree with you. I will decide that without listening to the FCC. But that's a good deal short of whether, given that it does have jurisdiction to administer the Federal Communications Act, its implementation of this particular provision goes beyond what its authority is. That seems to me a question of you can call everything that's ultra vires an excess of the agency's jurisdiction. You can. But that's not — that's not what we mean by the entry jurisdictional question. Does the agency have authority to administer this Act? Okay. Justice Scalia, the place where I do limit myself to the entry point and the place where you and I are going to disagree is whether the entry point is just the generic question, does the FCC administer the whole Act, or the somewhat more narrow question, does the FCC administer this statutory provision? Are there some statutes where parts of the statute are subject to the agency's Chevron rulemaking authority and it's zero plus one jurisdiction, and other parts are not? You just mentioned the case by Justice Scalia. I'm not sure that that involved that, because it does seem to be just reading through at reasonable time. That sounds like something where we can have specific elaboration on what it means. And to say the jurisdiction of the agency or the authority of the agency does not extend the rules to another seems a little odd at first. I recognize the federalism problems and so forth. Yes. Okay. The answer to your question is yes, and the best example is this statute. It is uncontested and incontestable that the FCC does not administer all of the Communications Act, this Court so held squarely in the Louisiana Public Service Commission case, in which there Congress added to the Communications Act Sections 251 and 252. And there was a provision in that statute that said that limited the scope of the FCC's power, as we say Section 332c7 does. We'll have to go through that and debate that. But the Communications Act is plainly, and there are other provisions as well, but the best example is the Louisiana PSC case. And so my ---- Roberts You do not defer to the agency with respect to this provision because it's outside its jurisdiction in the sense that it gets deference. That is correct. I would only cabinet in the following way, and there's the question on which you granted certiorari, is does the FCC get Chevron deference in the sense that it gets  in its assertion that it gets to interpret 332c7 with the force of law? I think Roberts Right. Now, the reason we are hearing all about jurisdiction, and it's kind of dressed up, is simply because the means by which Congress made clear it was not giving the FCC authority to get deference, however that's phrased, is the 7a, which speaks about nothing will limit the authority of the States.  And so if Congress were to make a provision that we wouldn't call it jurisdiction, but we would just say the FCC doesn't get deference. It would be a very easy jurisdictional question. We rely on two provisions of 332c7 to establish the proposition that Congress did not intend the general rulemaking authority in section 201B of the Communications Act to extend to 332c7. And those are Scalia That's no different from our holding in any case that the agency has no authority to issue this rule. It has rulemaking authority, but this rule goes too far, which is to say Congress did not give the agency authority to go this far. It's always a question of how much authority Congress gave the agency. We disagree. And I understand that you have a vision of how Chevron deference operates. We disagree with it in this respect respectfully, and that is we believe that every one of this Court's Chevron precedents has started sometimes only in a sentence because often it's very simple. Often it's uncontestable that it's a provision of the Communications Act that does fall within, for example, the FCC's 201B authority. But it is always, as you have always approached that question as judges. First, we decide, does the FCC have the power to implement this statute? Kagan It's just a level that doesn't help you very much. I mean, it's true that always there's an initial question of whether an agency is entitled to Chevron deference. But usually the way we answer that question is just this. We say, is this the agency's organic statute? Yes. Does that organic statute provide the agency with lawmaking power? Yes. Has the agency acted in accordance with that lawmaking under that lawmaking power? Yes. Well, then the agency gets deference. We go on to the next thing, which is step one and step two. So, you know, we don't what we don't do is this sort of provision by provision, subsection by subsection, did Congress have a special intent as to this subject matter or that subject matter or the other subject matter. We've just had some very simple rules about what gets you into the box where an agency is entitled to deference. Justice Kagan, I disagree. I honestly disagree. I'm going to give you three cases that I think show that I'm right and that your articulation of your that approach is not correct. And I encourage you to ask the Solicitor General what his best case is. It may be, he thinks, American Hospital, which I'll talk about. Here are my three cases. Louisiana Public Service Commission, provision by provision, the Court looked de novo at the question of whether Sections 251 and 252 of the Communications Act were subject to the general rulemaking power. It said no. Adams-Fruit, another case where the Secretary of Labor had general rulemaking authority over the Agriculture Worker Protection Statute, and the Court looked specifically at the private right of action and said, your authority doesn't extend here. And the last one is Mead, where the Customs Service had the general authority to administer that statute, and instead, the Court looked at the specific provision involved and said, do you have lawmaking authority with respect to these interpretive rulings? And so it has always done sometimes— Scalia. Did it say in all of those cases, we give no deference to the agency's contrary determination, because this is a jurisdictional question? Did it say anything like that? It did not. I have not— I didn't think so. Justice Scalia, I will tell you this. I am not overclaiming the cases. I am describing what happened in them, particularly on the axis of whether the Court went provision by provision. But very often I could decide a case — you know, the lower courts are running away from the question of deference fell none, because things have been so confused by Mead. So they simply decide the question, assuming no deference to the agency. That doesn't prove that in that particular case the agency wouldn't have been entitled to deference. Justice Scalia, let me tell you why. Whether it was or not, it would have come out this way. So those three cases don't prove what you say they prove. Justice Scalia, here's why I disagree. I picked three cases for a very specific reason, and that each of those three cases rejected the assertion of jurisdiction. And so that if Chevron were applying, the Court would have had to find that the statute was unambiguous, and it didn't do that in any of those cases. Kennedy, in those three cases, or at least Mead, some respect was given to the agency's view. Absolutely. It was just not the sort of deference that's so wooden under Chevron. Absolutely, Justice Kennedy. But take Mead, Mr. Gold. I'm sorry. I did. I agreed with Justice Kennedy vociferously. That was the end of my answer. Mead presented – whatever you think of Mead, it's a very different question from this, because what the majority in Mead said was that the agency wasn't entitled to deference because it was acting by way of these opinion letters that weren't – that didn't have the force of law. So that's the threshold question, is does the agency have power to make rules with the force of law, and is the agency exercising that power? That is a threshold question that's been set by this Court. It's a very different kind of question from provision by provision, subsection by subsection. Did Congress think that the agency had authority over this particular subject matter or not? Okay. I have two – I have three answers. They'll be brief. Louisiana Public Service Commission and Adams-Fruit are as I described them. The reason that Mead is helpful to me is on a different axis than you've described, and that is that the agency there had a general – generally applicable authority in which it could have urged that its authority to issue those rulemakings, that it was entitled to deference on its view of its power to issue rulings with the force of law. But the third thing that I want to say is let me just take – I think this is – Scalia. Before you get to that, I'm really surprised at your response to Justice Kennedy that you agree that even where the agency has no jurisdiction, although you won't give Chevron deference, you will give whatever the other kind of deference. Why would you give Skidmore deference if some non-jurisdictional agency comes in and says, hey, by the way, Court, you know, I think that this is the right answer. Oh, we will listen to that respectfully. We won't necessarily give you Chevron. Why would you give it any deference at all if there's no jurisdiction? Because, Justice Scalia, Skidmore deference is, as you know, of course, and you have been a very powerful critic of it, obviously, in your opinions, that it is the – you give the agency the respect of the persuasiveness of its opinion. And I took – or I – the part of the comment that I was agreeing with Justice Kennedy was, is as Justice Ginsburg has suggested, the FCC understands the Communications Act. And you might also have said, it seems to me, that that assumes the issue, assumes the premise. Yes. The question is, is there jurisdiction or not? That's that. And that's the point. If you say, when there is no jurisdiction, why do you give deference, that assumes the very step we're – the very question we're trying to resolve. And that's all you think that Skidmore deference means, you will listen to opinions that make sense. We – the Court has articulated – I'm quoting the Court. But just to agency opinions that make sense, not to, you know – It's more than makes sense, Justice Scalia.  Justice Sotomayor, I recognize that it has its expertise. The question is, do we have to, when the statute is ambiguous, as it will often be, do we have to accept as a matter of law their view that they do have jurisdiction? I do want to – Mr. Goldstein, can – following that, it seems to me you are basing your argument on what's said in 7A. And that preserves the authority of the local governments. But the provision that we are talking about is B. And B says limitations, authority that the local governments do not have. And among those limitations is that they have to act within a reasonable time. I just don't understand how the FCC's general rulemaking authority is removed as to a provision that limits what the State and local governments can do. You and Justice Breyer have encouraged me to get to the merits question. So let me turn the corner, if I might, to how we think a court would look at this question de novo. We have two points. One is the statutory provision. And this is going to be at pages 1 and 2 of the cert petition, if you have that copy in front of you. The statute – and so, Justice Ginsburg, I'm going to answer your question, but I want to make a couple of quick points about our offensive argument about why it is Congress didn't intend the FCC to implement the statute with the force of law. It begins with preservation of local zoning authority. Subsection A says, except as provided in this paragraph, nothing in this Act, which includes section 201B, shall limit or affect the authority of a State or local government with respect to this subject matter. Then, in subsection B-5, Justice Ginsburg, you said the essence of the statute is B. In subsection B-5, Congress located the enforcement power of this statute in the courts. Any – and this is at the bottom of 2 – any person adversely affected by any final action or failure to act by a State or local government, or any instrumentality thereof that is included in this statute. Ginsburg. But you're skipping over 2, which is the phrase, reasonable time. I could read the whole thing, Justice Ginsburg. My point is going to be that that reasonable period of time phrase is enforced through the courts. Now, Congress has to do this. Just on a practical level. Yes. Ginsburg. What sense does it make to read this to say that each time there's a dispute that comes to the court, the court will decide in that particular case with no guide at all what the reasonable time is? Ah, I will now turn to that question. It makes enormous sense, and it was explained by the conferees in the conference report at page 209 of the Petition Appendix. And what happened here is that Congress – the House version of the bill instructed the FCC to conduct a rulemaking, and the rulemaking would set standards for establishing a reasonable period of time. The Senate came along, which had no such provision, and said, no, we're going to have a provision that instead says that nothing else in the Act will apply to this question, that you will go to the courts rather than to have a rulemaking. The rulemaking must be canceled, and then explained its intent. And so if I could just read that to you very quickly. Since I didn't know that, and I'm just looking at the text, okay, there are innumerable statutes which, after giving the agency rulemaking authority, provide judicially, you know, review under this statute shall be held in such-and-such a court. There is no conflict whatever between a statement that any person affected can sue in Federal court and the possession by an agency of rulemaking authority. The two simply don't conflict. Justice Scalia, I – my point is that it is a point in our favor, particularly when you compare. B-5 has two parts. In addition to the statutory history, which was told the FCC to cancel the rulemaking on this point, subsection B-5 says you go on the reasonable period of time provision, you go to the courts, and on the questions related to radio frequency emissions, which is also covered by C-7a, you go to the FCC. And what the conferees explained quite clearly, Justice Ginsburg, is that you can have two different visions of what reasonable period of time is. And that is a general – and this is what – the first one is what the FCC you would expect to implement. And that is a reasonable period of time is a general national standard, a kind of baseline, what they said is a presumption of 90 or 150 days. And that's what we think generally the FCC will decide how long it takes to act on a wireless application. Or you could think about reasonable period of time as within the locality, and that is, is the locality following its ordinary standards for resolving sighting applications and not discriminating against wireless applications? And that the latter is what Congress intended. And it makes every sense in the world in the context of this statute that Congress wanted that, because, first, it has always been the case that State and local sighting – that wireless sighting and all sighting decisions are decided by localities, not by the Federal government. Ginsburg. How do you know when it's 30 days after a failure to act? That, Justice Ginsburg, just to put this in context, the government says that the FCC was concerned that the wireless companies wouldn't know when to go to court. They cite no case in which that was ever an issue, neither the wireless companies nor them. Kennedy. Well, I wouldn't know when to go to court. Let me ask you this. Suppose there is a provision of the statute which is very difficult to understand. Yes. Does that bear on the Chevron step zero analysis on the question of what you call jurisdiction? It does, Justice Kennedy. All right. It seems to me that Justice Ginsburg identifies the real point. I was looking at this statute. I say, you know, how do I know when this agency has failed to act? I don't – that's a very obscure data point. Okay. Two things, Justice Kennedy. First is I will tell you that Congress consciously used phrases, reasonable period of time, and substantial evidence contained in a written record. Those are the subdivisions of subparagraph B, which Justice Ginsburg was pointing to, because those are judicially administered standards. And I will just read you one sentence from the conference report. The phrase, substantial evidence contained in a written record, is the traditional standard used for judicial review of agency actions, the agency here being the locality. And, Justice Kennedy, on your question, if Justice Kennedy Where does that say anything about what you just read about what's a reasonable time? Yes. Was that at 209? That was at 210, Justice Kennedy. There is a similar passage relating to reasonable period of time. It's quite clear, I believe, the conference report is 4 or 5 pages long. When you have the opportunity to read it again, I think you will see that Congress was adopting local standards, a local approach to deciding this question against a broader framework. Can I just answer, Justice Sotomayor? Mr. Goldstein, could you go back to the question presented? Sure. I've read a lot of briefs in this case, and I don't have any idea what to tell a law court. Yes. How to articulate the test or how to apply it. Yes. Given that you started with saying it's almost impossible to talk about what's jurisdictional and what's an application of jurisdiction. So articulate the test and tell me what I tell the lower courts. The lower courts decide de novo whether the agency was given the power to interpret a particular provision with the force of law. That's the entry point question, the threshold question. All of this Court's. So that's what the Court here did. It looked at the Communications Act. It said it has the power to pass regulations with respect to this Act. There is no clear exception. I still haven't quite understood, other than in the academic literature, what the difference between Step 0 and Step 1 is. And so there's an ambiguity, and now the agency is given deference. So where in this conversation is there's? Here's where it went wrong. It looked at the statute. It found the relationship between 332C7 and 201B ambiguous. And when it found ambiguity, then it said it was compelled to accept the FCC's reading. It did not resolve that ambiguity itself as it would in any other case involving statutory construction. Before I sit down, Justice Kennedy and Justice Ginsburg have raised the point that the government did, that when does someone know when to go to court? And the only part of my answer I got in was that there are no cases identifying that as a problem. And the reason is that it's a continuing violation. No communications provider, so far as we are aware, was ever thrown out of court for coming in too late for a failure to act, because every day the State and locality didn't act is regarded as an alleged violation, and it doesn't take away from jurisdiction to go to court. There are no cases that support their concern. If I could reserve the remaining time. Roberts. Thank you, counsel. General Verrilli. Mr. Chief Justice, and may it please the Court, let me start with a central point that I think cuts through most of the arguments that Petitioner has made this morning. Chevron does apply to a court's review of an agency's determination of its jurisdiction, but only after a court concludes that Congress has delegated to the agency generally the authority to make rules carrying the force of law, and that the rule in question was promulgated in an exercise of that authority. As to that specific provision? Verrilli, no, in general. I think that the language this Court used, taken from Mead, last term in Astru in the unanimous opinion for the Court in Mayo, the term before, was is the authority – is the agency vested with authority generally to make rules with the force of law? Roberts. Well, that's right, but your argument, it seems to me, can't be. Let's say you have a general statute and you've got a provision at the beginning that says this is authority to interpret this as delegated to the agency, and you go along, but then all of a sudden in, you know, section 123, it says it doesn't get any deference interpreting this provision. Now, you would not say that the first general one controls the specific withdrawal of deference, would you? Verrilli, no, you would say you don't get deference on 123. And as I understand the case, and that's why I persist in thinking there's no great disagreement here, your friend on the other side is saying that, particularly given 7a and some other things, you should read 7b-2 as if Congress had said, agency, you don't get any deference here. You can read it that way, they say, because 7a says nothing shall limit what the State can do other than what's here in the statute. And if you let the FCC, if you give them deference, you're letting something else limit what the State can do. So why – and then you dispute, it seems to me, just whether you should call that jurisdiction or not, because people think of jurisdiction as meaning, oh, you don't get through the door. But if what they mean by jurisdiction is simply that the agency gets no deference on this point, then it seems to me everybody's saying the same thing. Verrilli, I'm not sure I agree with that, Mr. Chief Justice, because I think the point here is that to the extent, once you've satisfied that general threshold that I identified, then to the extent there is ambiguity, if the statute is clear and in Your Honor's hypothetical I'd submit the statute is clear at that point that the agency – that the agency's authority has been carved out with respect to that particular provision, if it's clear you don't get to the question of whether there's any deference to, the issue arises when there's ambiguity. And our position is that – Roberts, Ambiguity in the provision that says agency, you get no deference, or ambiguity in the substantive provision at issue? Verrilli, Either one, because – Roberts, Well, but if there's no ambiguity on the provision that says you get no deference, then it doesn't matter whether there's ambiguity on the subsidiary one, right? Verrilli, That's correct. But if there is ambiguity on the first, our position is that Chevron applies and that the agency gets deference so long as it's a permissible construction of the statute. And that's true whether you call it jurisdiction or whether you call it substance. And one reason for that, Mr. Chief Justice, is that I don't think there is – I do think this is really a Pandora's box situation. I do not think there is a clear, neat dividing line between what my friend, Mr. Goldstein, describes as a jurisdictional issue, an issue of an interpretive authority, and a question of substance. And I think you can see that in the briefing in this case. Mr. Goldstein has tried to define jurisdiction in a particular way. The IMLA has defined it in a very different way. They say any question that goes to the who, what, when or where of an agency's assertion of authority is a jurisdictional question as to which agencies get no Chevron deference in the course of ambiguity. And the reason that IMLA gives for stating that position is exactly the same reason that Mr. Goldstein gives for stating his position, which is that you're talking about an agency action in excess of the scope of its delegated authority, and once you say that, there is no Chevron deference. And I would respectfully submit, once you have got a situation in which it is clear that the agency has general authority to implement and the argument is whether its authority to implement has, with respect to a particular provision, has been a Chevron deference, is appropriate. And that is the practice of this Court. In repeated numbers of cases, American Hospital Association has certainly won such case where the NLRB had general rulemaking authority, there was a statutory provision that said bargaining units needed to be determined by the NLRB in each case, and the argument was made that that ought to be understood as a carve-out from the NLRB's general authority requiring case-by-case decision-making with respect to bargaining units, and the Court rejected that argument, saying that in that case, whatever ambiguity there was in the statute ought to be resolved under Chevron in favor of the agency. Sure, CFTC and sure is a comparable case, and I would submit Iowa Utilities Board is the case. Sotomayor, let's go back to the question presented and break down your argument. Is it your position that what the Court asks first is whether Congress has spoken clearly on the agency having authority or not? Is that subject to de novo review? Let me walk through the steps of our position, how we answer the question presented. Tell me what gets deference when and what's subject to de novo review. Here's our answer to the question presented, Justice Sotomayor, that there is de novo review of the question of whether Congress has delegated authority to the agency generally to act with the force of law, and whether the interpretation claiming deference is an exercise of that delegated authority. Once that is satisfied on de novo review, Chevron kicks in. Now, step one of Chevron is, of course, de novo review, using the normal tools of statutory construction to answer the question whether Congress has spoken clearly on the issue of whether the agency has authority. If the answer is that Congress has, then that disposes of the case. If Congress hasn't, then one moves to step two of Chevron and asks whether the agency's interpretation of the provision at issue, whether you call it substantive, whether you call it jurisdiction, is a permissible construction. Is it within the bounds of what the language can reasonably accommodate? And if it is, the agency is upheld. That's the way we think the issue in this case should be analyzed. That's the way we think every issue should be analyzed under Chevron. We think that's what this case is, this Court's cases say. We think this is what the Court uniformly and routinely does in analyzing these questions. I think that's what the Court says. Sotomayor, so deal with the three cases he mentioned. Louisiana Public Service Commission, a little bit of confusion, I think, about that case. That case was decided in 1986. Congress added the sections Mr. Goldstein referred to, 251 and 252 of the Communications Act in 1996. And what Louisiana Public Service Commission did was define the outer limits of the commission's authority. It said that nothing shall be, nothing in this Act shall give or shall be construed to give the commission authority or jurisdiction over intrastate communication. So it was an express carve-out. That seems to me, had you run that through the Chevron analysis, it would be a pretty straightforward Chevron step one case. Adams Fruit, the Court held specifically in Adams Fruit that the plain meaning of the statutory provision at issue foreclosed the agency's interpretation. And that's at 494 U.S. at page 646. So that was a Chevron step one case. It then did go on to say, with respect to Chevron step two, that even if we were going to think about granting the agency deference here, they wouldn't get it. But I think the reasons, if you map the reasoning of Adams Fruit onto this case, it supports our position and not Mr. Goldstein's. What the Court said in Adams Fruit was that the Department of Labor did have the authority to implement the substantive provisions of the Agricultural Workers' Protection Act, including the substantive provisions governing motor vehicle safety. What it didn't have was the authority to restrict judicial remedies available for the private cause of action created under the statute. Well, if you map that onto here, what the FCC has done here with respect to the reasonable time provision in 332c7b of the statute was to provide a rule of decision for the substantive provision of the Act, leaving to the courts the decision of what remedy, if any, there would be for a violation of those substantive provisions. So it totally maps on to the FCC's interpretation of the right way to think about statutory authority in this case. And if I — I'm sorry, Justice Breyer. Breyer, don't be too much. Breyer, what worries me about it is you and I both have in our offices thousands of words which are in the U.S. Code. And there are hundreds of thousands or millions of employees in millions of different kinds of agencies. And if we turn Chevron into the tax code, it's going to be a nightmare, in my opinion, not necessarily in that of my colleagues. So, as you know, I've written a somewhat different approach. And it says, let's not do this, but just so, who would win here? Suppose you just said, look, what we're interested in is just one question, whether Congress wanted the Court to give, in this kind of situation, deference to the agency. And that, the answer would be, it depends. Chevron is a good rule of thumb, but it isn't a straitjacket. So what you'd look at here is it's the FCC that's in charge of national communications, of which this is part. There is a specific provision, as your colleague points out, that says, but don't interfere with the States when they're citing stuff. But then there's a limitation to that specific provision, which consists of six or seven parts, all of which maintain a lot of authority in the FEC or rules about what they're not supposed to do. And then here it uses the word reasonable. So where you have a Federal agency with expertise that's in charge of this kind of area, and they have rulemaking authority, and you have a statute like this which is a little bit ambiguous, but not too, in respect to the point about whether they do interpretation, you'd add up those factors and make a decision. I mean, that's such a simple – I mean, that's Louis Jaffe, that's the founders of administrative law, that's everybody until we get into a straitjacket. And it isn't even Chevron doesn't go against this if you don't think of it as a straitjacket. Verrilli, Two points. First, applying that approach, I think it's pretty clear that one would uphold the FEC's judgment here. Second, I understand that that's Your Honor's approach. I don't think that's the most recent performance of this approach. Scalia, I didn't make it up. It was Louis Jaffe. Verrilli, I understand that Your Honor is the most recent proponent of this approach. Scalia, That's no matter. Louis Jaffe isn't even a member of the Court. Verrilli, But I think the Court is in a different place, and I think the Court is in a different place for a good reason, because I think it's our interpretation of Chevron that avoids turning it into the complexity of the Internal Revenue Code, because I think if you think about what my friends on the other side are proposing here, what they're suggesting is that once you've cleared that initial hurdle of deciding the agency has general authority to implement the statute with the force of law and that this is an exercise of that general authority and therefore not to just I mean, I think you can show, which I'll spare you at the moment, that all the cases like Mead are consistent with what I said. And cases that are not consistent are consistent with Judge Friendly's set years ago, where he said there is no coherence to the Supreme Court's cases in this area. When they like a result, they say they have deference. When they don't like it, they say they don't. Verrilli, I guess I would beg to differ about that. I think our view is that Chevron does provide a stable framework for the development of administrative law. Scalia, Justice Breyer would replace that with a rule where they like the agency to have authority, it has it, and where they don't like it to have authority, it doesn't. I'm not sure that's any better than the description of Chevron. Verrilli, you don't have it. I'm sorry I brought this up. Verrilli, With respect to the issue that's in front of the Court now, I think the — what my friends on the other side are asking is actually for an additional layer of complexity in the analysis. Even after the general authority is established to make rules with the force of law, and even after it's established that the rule at issue is — has been done in the exercise of that, my friends on the other side suggest that there's another layer of de novo review there to answer the question of whether this particular provision gives authority to act with the force of law. Roberts Your friend on the other side has another set of arguments about why you should treat this particular provision differently, and that is because it concerns the authority or the lack thereof of State and local government agencies. Now, does that play any role at all in your analysis? Verrilli, Yes. Roberts That we're not talking — you know, obviously, the dividing line between State authority and Federal authority is a more significant one than some of the other questions as to which agencies get deference, which is whether rates are reasonable or not reasonable. And this provision is written in terms of a preservation of State authority. And your view would give Federal agency deference under Chevron, very considerable deference, in defining when there should be Federal authority and when there should be State. Is that at all a pertinent consideration? Verrilli, It's definitely a pertinent consideration, Mr. Chief Justice. Let me talk about that in general and then move to the specifics of this case. In general, it's a pertinent consideration that is accommodated within the Chevron framework. At Chevron Step 1, the Court applies the normal tools of statutory construction. The normal tools of statutory construction include a clear statement rule. They include the presumption against preemption. And this Court, I point to the normal. Roberts I'm sorry to interrupt you, but the normal rules of statutory construction include a clear statement rule? Verrilli, Well, when the question is whether Congress and it's and let me try to use this with a specific case, the solid waste of Cook County case. That's a case in which the Court declined, it didn't say that that issue there was exempt from Chevron analysis. It applied the Chevron framework and it said at Step 1 of Chevron, because the migratory bird rule pushed to the very outer limits of Congress's Commerce Clause authority, that the Court was going to apply a clear statement rule in that situation before assuming that. Kennedy Who has to be clear in their statement? Which way? Verrilli, Congress has to be clear in its statement. Kennedy That it intended to intrude upon State authority. Verrilli, That it intended to give that authority to that extent, exactly. Kennedy But the agencies have no historic responsibility or tradition, quite unlike Article 3 courts, of safeguarding the Federal balance. Verrilli, But Chevron Step 1 is, of course, applied by the courts, Justice Kennedy, and that's where the protection comes in. And with respect to this particular case, I don't understand the question, to tell you the truth. This matter is not left with the States. It's going to be decided by a Federal instrumentality, right? Either by the agency, which says 30 days is the rule, or by Federal courts, which perhaps could issue opinions that say 30 days is the rule. Scalia I mean, this, you know, it's an interesting separation of powers question within the Federal Government, but I don't see how it's a question of whether it's the States or the Federal Government that's going to call the tune here. It's going to be the Federal Government, isn't it? Verrilli, That is the one that was going to be my specific point in response to your question, Mr. Chief Justice. Roberts No, it wasn't going to be. The idea that there's no difference between the Federal judiciary defining the limits between the State and Federal power, and having an agency of unelected bureaucrats responsible to the executive saying when the State controls and when the Federal controls, those are vastly different propositions. Verrilli, Yes, but there's a third variable here, and that's what's key, which is in this situation, in 332C7B, the limitations provision, Congress has spoken unambiguously and said that the following limitations on local zoning authority must be respected. Verrilli, Yes. And no one has suggested that that was at the outer limit of Congress's Commerce Clause authority or anywhere close to it. Roberts But they've also said in 7A that those are the only limits, not add on to this any limits that unelected bureaucrats might decide to impose, and will give them, and the courts must give them vast deference in enforcing those limits. Kennedy Unelected Federal bureaucrats. Verrilli, But I do think that what Justice Scalia said is correct. That the question here is not whether the States will decide. The question at the end of the day is whether the agency will be able to exercise its usual authority to interpret reasonable comments or whether Federal courts will make those decisions on a case-by-case basis. Scalia Don't you think that the issue of whether unelected Federal bureaucrats should decide it or unelected Federal judges should decide it is an issue of separation of powers rather than an issue of Federal-State?  Verrilli, In that respect, I think this case is really just like Iowa Utilities Board in that the argument there that was Roberts AT&T versus Verrilli, Yes. And that's the argument there was that you ought not interpret the FCC to have authority to implement particular rules because Congress gave to State public utility commissions the responsibility to carry out and execute the rules and then to Federal courts the power to review them and cut the FCC out. And the argument there was that respect for States ought to lead you to conclude not to apply Chevron deference to the agency. And in rejecting that argument in section 2 of the opinion, the author of that opinion in nowhere, in no place applied Chevron deference in answering that question. It was entirely de novo, unlike in section 3 when it was finally decided, okay, we've got the answer here and now we will defer to the agency on the substance of the determination. Verrilli, I understand that the Petitioner has made that argument, Mr. Chief Justice. I read the opinion differently, and if I could, I'll explain why. In section 2, and looking at pages 384 and 385 of the opinion, after the Court had established that there was general authority under section 201B to implement the provisions of the Act, which I do think the Court established de novo and we would agree that that's appropriate, the Court then moved on to consider these specific jurisdictional questions. And the Court looked at the provision of the statute which gave authority to the State commissions, and then considered the argument that one ought to infer from that that the FCC is cut out of the process. And the opinion of the Court says, We think this attributes to that task a greater degree of autonomy than the phrase establish any rates necessarily implies. It seems to me what the Court was saying there, and then on the next page says something very similar about the next argument that the challenges were making that case. And I think what   It does not, Mr. Chief Justice, but It does not, in part 2, which is 1, 2, 3, 4, 5, 6, 7, 8, 9, 10 pages of analysis, the Chevron case. It does not. They're applying Chevron deference. But it does in the conclusion. I think my friend has suggested that we weren't accurate in our discussion of the concluding paragraph of this phrase, but I'd like to turn the Court's attention to that, because I think we were. This is at page 397 of the opinion. Okay. There's a sentence that starts, The 1996 Act can be read to grant most promiscuous rights to the FCC vis-a-vis the State Commissions and to competing carriers vis-a-vis the incumbents. And the Commission has chosen in some instances to read it that way. But Congress is well aware that the ambiguities it chooses to produce in the statute will be resolved by the implementing agency. We can only enforce the clear limits that the 1996 Act contains, which in the present case invalidate only Rule 319. Now, the jurisdictional dispute was the dispute between the FCC, the FCC vis-a-vis the State Commissions over who had the authority to implement the rules. So while I agree, Mr. Chief Justice, that Chevron is not cited in that section 2 of the opinion, the tenor of that discussion does seem to me to say that the Court was looking, once it had established general authority, for clear evidence that Congress had intended to carve out from that general authority the particular provisions at issue, and because the provisions to which the challenger's pointed did not necessarily imply an intent on the part of Congress to carve it out, that the Court wasn't going to find a carve-out. So I do think it's really the analysis in Iowa Utilities Board is quite consistent with that. Breyer, but I would dissent in that, I think. Yes, you had a different view. Right. And so I agree with you, this follows a fortiori from the majority. But I didn't think, and this is what I wonder, is, you say, unelected federal bureaucrats, administrative law is about Federal administration. That's Federal administrative law. And I've heard here people say we're talking about them adding something. I didn't think that's what was at issue. I thought that there's a word in the statute, reasonable, and what the administrators did at the FCC was to interpret that word. Am I right or wrong? That's certainly how we understand the situation, Justice Breyer, that the agency does what the agency does. What was added? What was added? It interpreted the meaning of the language, reasonable time, to give it more precise content to allow, to deal with the failure-to-act situation. Can you tell me what is the ambiguity? Because I looked at B, B is limitations, limitations is on the State, and then it uses the phrase of what the State cannot do. The State has to conform to a reasonable time. What is ambiguous about this? Verrilli, Jr. Well, our view, Justice Ginsburg, is that there isn't any ambiguity, that the rule ought to be upheld no matter what standard of review applies. In fairness to my friends on the other side, but I do think this points up the problems going down the road they're suggesting, is they Scalia I thought reasonable was what people are talking about as being ambiguous, although I think I don't think ambiguous is the proper word. Reasonable is vague. You don't know exactly what it means, right? Verrilli, Jr. I took the – I think that it's certainly susceptible of further elaboration in that sense, but I took Justice Ginsburg to be asking me about the ambiguity with respect to the authority of the 7A. Breyer, reasonable is uncertain who, who has – doesn't tell us who has the authority. Verrilli, Jr. In fairness to my friends on the other side, as the Chief Justice has just indicated, it's an inference from 7A and I suppose an inference from 7B-5 in that the courts are in the process. But I do think this points up the difficulty, is that if you look at the provision that the FCC is actually implementing here, it's not a jurisdictional provision. It's a normal substantive standard. The FCC is giving it more precise content. That's what an agency's job is. It's doing its job here. Roberts, and you're talking about 7B. Verrilli, Jr. Yes, 7B-2, right. What is there about 7A that you think is ambiguous? Verrilli, Jr. Well, we think it's clear that the FCC has authority given 7A because of the except that's provided in this paragraph, our argument. It's our – I think our friends on the other side who say that it's 7A that creates uncertainty about whether the FCC has the authority to implement the reasonable time provision in 7B-2, and I think that points up the problem of adding this additional step to the analysis. Once the Court has satisfied itself that the agency has general rulemaking authority, it's not going to be hard to cobble together inferences to make arguments on de novo review that the agency lacked the authority to implement a particular provision with the force of law. I think you're adding needless complexity, and I do think, the reason I suggested earlier that I think this is a Pandora's box is because I do not think there's a, at the end of the day, a principled line that can be drawn between what my friend describes as interpretive authority questions and the kind of who, what, when, where substantive questions, substantive jurisdiction questions that Respondent IMLA is focused on. In each of those situations, the argument is that the agency has acted in excess of its statutory authority. And if that's sufficient to justify de novo review in the first instance, it's sufficient to justify de novo review in the second instance, and if that's the case, then I would submit that you've really unraveled Chevron. The good work that that doctrine does to stabilize the development of administrative law is gone. There will be an argument in every case that de novo review is required, and in every case in which a court agrees that de novo review is required, once the Court has interpreted the statute as a matter of de novo review, then you have ossification of the administrative process because that interpretation is locked in. Roberts, I mean, your argument there is basically saying when the statute says something is reasonable, it means that the commission doesn't have — it's a jurisdictional question whether it's reasonable or unreasonable. But it seems to me that this provision is quite a bit different. It talks about the authority of a State. And usually when we're talking about the authority of which entity can govern, we view that as jurisdictional. There may well be cases at the margin that are difficult. But your argument is basically reasonable or unreasonable is the same as State or Federal. No, I don't think it is, Mr. Chief Justice. I think the Federalism values are important, but I do think as the — No, no. I'm not talking about the Federalism values. I'm talking about your argument that, oh, once you say you can draw a jurisdictional line here, people will argue you can draw it everywhere. Well, I do. I do think that's true. And I think the arguments that are being made by my friends on the other side demonstrate that. But I guess what I would say in this situation in particular, that really not — the  because applying Chevron in the normal way, one would not conclude that Congress has spoken clearly and restricted the agency's authority. And there is no means — there's no basis to apply a clear statement rule here, because Congress clearly had the authority to impose the limitations that it imposed in subsection B. And those are direct limitations on the State authority, and Congress made that judgment. It isn't the agency waiting in on its own to decide that State or local authorities should be subject to limitations. These are judgments that Congress made, and the agency is implementing them in very much the same way that the Court found it was appropriate for the agency to implement the preemptive scope of the word interest in the National Bank Act in the Smiley case. Scalia. Mr. Verrilli, why isn't it an easy answer to the whole case to read 7a, except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of State or local government. Okay? Except as provided in this paragraph. And then later in the paragraph, in a subsection entitled Limitations, it says, a State or local government shall act on any request for authorization within a reasonable  Verrilli, That's why it's our view. Roberts, That's why it's our view. Verrilli, Yes, that's exactly right. That limits it. And the question then is, of course, whether that's enforced in court or before the agency, right? No. I think the question is whether the agency has the authority to flesh out the substantive standard that the Court will subject to. Whether the standard is defined by direct judicial review or by the agency, with deference to the agency. I agree with Justice Scalia, because I do think that no matter what view of the matter the Court takes, the FCC's rule ought to be upheld, but I do think that the position my friends on the other side are advocating threaten to unravel the Chevron framework and destabilize administrative. Sotomayor, General, if the agency had said reasonable is 30 days, period, and not done what it did, which was create a rebuttable presumption, would that have been appropriate? Would we have had to uphold that? And if not, how would we have struck it down? What step? You would analyze that under Step 2 of Chevron, Justice Sotomayor. You would decide whether that's a permissible construction of the statute, whether it's reasonable or whether it's arbitrary and capricious. That would depend on what the record looked like, but certainly the Court would exercise review over that matter. If the Court has nothing further. Thank you, General. Mr. Goldstein, you have 4 minutes remaining. Chevron is at an end. It's unraveled. I've heard and I regret that I have contributed to such a horror. This is silliness. The Court has we have cited to you 17 cases of yours in which you have always looked at the entry point question de novo. And on the idea that we're making this more complicated makes no sense to me, because what the government wants, and you see this in the Fifth Circuit's decision, is a surround of Chevron on whether they have authority. Go through that entire process. And then go through it again, assuming that you do believe they have that authority. There's not a step that we are adding to the inquiry. Well, Mr. Goldstein, I think with respect, it's not silliness. You have been running as fast as you can away from the arguments that IMLA has presented, that in every case it's a who, what, where, you know, or how question, and that we have to answer that. But the question that General Verrilli raises, I think it's a fair question, is how your argument, which says that we have to consider in each case as to each statutory provision whether an agency has interpretive authority, is any different from IMLA's argument that we have to consider with respect to every case whether we're dealing with a when, what, who, where question or a how question. It's the same argument, isn't it? No, it is not. This Court has said time and again, including in Mead, that the precondition to the application of Mead is a determination that Congress delegated authority to the agency to interpret the statute with the force of law. And that has to be asked in every single case, and that is a distinct inquiry. Once you decide that they have that delegated authority over that provision, then, as this Court has done in every case. Kagan, of course, there's a threshold question, but the threshold question has always been, is the agency interpreting its organic statute, and does that statute give the agency rulemaking authority, and is that what the agency is exercising? We're at loggerheads, Justice Kagan. I believe that Louisiana Public Service Commission and Adams-Root are just simply contrary to that. It also doesn't make any sense to believe that Congress gave the agency this 201B authority and then implicitly gave the agency the authority to decide how far 201B extends. This is just a question-begging exercise. They say we have this general authority. I ask, does that general authority apply to this particular provision of the Act? And they say, well, our general authority gives us the power to answer even that question, and that is not correct. Kagan, I guess I'm still waiting for the way in which your inquiry is different from IMLA's inquiry. It is because I am only asking the threshold question, did Congress give the agency the power to interpret this statutory provision with the question of law, and that is a different inquiry. And I'll give you an illustration, and that is, there is an extended discussion of this question in the FCC's order. It had no difficulty identifying that as a separate inquiry. I did want to just turn to the merits. Let me just say that the Solicitor General's argument about whether the 201B authority extends to 332C7 is a great illustration of our argument on the question presented, because that's a lawyer's argument. There was not a word that my friend said about there was a technical question of communications law and how wireless sighting facilities operate. That's the kind of question that Congress gives to agencies. It is not the threshold lawyer's issue, does this statute read this far. I would only encourage you on the merits question, which is not included in the question presented, which you didn't grant certiorari on, that is, the application of de novo review to this statute to pay more attention than I think this argument has given it, because it wasn't the core issue briefed in the case, obviously, to what Congress did in this statute. There was a version of this statute that gave the FCC the very authority that it's claiming here. That was the House version of the bill that was rejected in Congress, in conference. Congress adopted this version, ordered the FCC to cancel the rulemaking, and reserved this power to the courts, the authority to decide what is a reasonable period of time. Thank you. Thank you, counsel. The case is submitted.